09-1306 Good morning, Your Honors, and may it please the Court, unfortunately I am here once again to discuss the plague on this Court of inequitable conduct rather than focusing on the misconduct of the defendant and the willful infringement of this particular patent. We are once again focused on the question of whether or not the patent holder in this Court of Inequitable Conduct has done so with the requisite intent. I thought, frankly, that this Court in Star Scientific had sent a fairly strong signal that it must take a very hard look at what the District Court's findings are and evaluate both whether there is in fact clear and convincing evidence of materiality, clear and convincing evidence of intent, and what I think is even most important, that when matters are essentially inequipoise, if you could draw reasonable inferences either way, then in circumstances where the inferences could go in that direction, the only fair conclusion is that there is no clear and convincing evidence of inequitable conduct. The problem here is that you've got statements that the applicant made to the patent office about some possible prior art, which seem to be contradicted by this brochure, and the question is whether that's material and whether the findings about intent are satisfied. I mean, it is a little troubling that in two places, both in the patent itself and in the information disclosure, referred to this other system and omitted a reference to the fact that it integrated billing. Right. Although... That's the problem. Right. Do you agree, for example, that if the brochure here had come into the applicant's possession before the filing of the application, that they would have had to disclose that? Do you agree with that? I'm not actually 100% sure whether they would have had to disclose it, although the testimony was quite clear that under the circumstances, if they'd had it ahead of time, they would have disclosed it. So in that sense, it's beside the point. I mean, I think what's important here is to recognize that this obviously came in. The district judge accepted the idea that the information didn't come in until later, and the attorney who evaluated it, excuse me, the patent agent who evaluated this said two things. First of all, it was undated, and as such, he didn't include it for that specific reason because he had been previously chided. There's a good faith explanation. The district judge made no findings with respect to that good faith explanation, and under our scientific, that ought to take the failure to put the brochure before the patent office off the table. And the second question is, why did he only describe the portions that he did describe? And again, there his explanation was, I looked at the first page, and there's a specific listing of what this software accomplishes, including medical charting, which was not disclosed in the application in the first instance. And what did he conclude about that? He said that if this is their best description of what this software accomplishes, then I will reproduce that, given that the IDS is merely designed to give the examiner sufficient information to allow him or her to make an assessment of whether or not there is sufficient firework to worry about. Yeah, but let me tell you what the problem is. The problem is that the description of this other system, both in the specification and in the IDS, speaks in the present tense. It does not speak about what existed a year before the filing of the application. It speaks in the present tense. And the problem is that this brochure, at least at the time of the IDS, contradicted the present tense statement of what was in this other system. The IDS didn't speak about what was prior or not, right? No, what it said is that this is a description of what, well, I mean, it speaks to what it had already identified as prior art and was designed to make the examiner focus on that. But the identification specification doesn't refer to this system as prior art, does it? Yes, it's the only prior art description that's in either the application or the IDS. I mean, that was the whole purpose of the IDS, was to make it clear. Where do they say that it's prior art, the system's prior art? It's the only pre-existing activity that is identified in the specification itself. But it seems to speak in present terms. It says their medical software provides computer software. It speaks about what existed as of the time of the application, not what existed in terms of prior art. Well, I mean, Judge Dyke, I'm at a bit of a loss, because it seems to me that if you are bringing to the attention of the examiner in your application what system exists currently, and it's the only system you identify as having any relationship to the invention that you're putting forward, then you are clearly indicating that this is what you regard as the only potential prior art that's out there. Well, that's true. But the problem is that the specification describes it in current terms. And as I understand what the district court's essentially saying, is if you're going to describe it in current terms, you can't be selective about what you describe. You need to describe the whole thing, including the features that allegedly confer patentability here. Right. But the problem with that, of course, first of all, again, the application, the original application, didn't have the brochure, and the district judge accepted that. Well, but it came three weeks later, so at least there wasn't- Right. But then you're just evaluating what's in the IDS, what's in the disclosure statement. And there, the problem with the disclosure statement is that you don't know from the brochure, because it's undated, what system it's describing. It could be describing something that existed prior to the application being filed, or it they chose in the IDS to describe it in current terms. And when they chose to describe it in current terms, doesn't that create an obligation to be complete about it? If they said in the IDS, this is a system that existed a year earlier, then you could understand they're saying, well, here's this current brochure, so that's not material to what existed a year ago. But when they describe it in current terms, in the present tense, in the IDS, then aren't they being selective in leaving out the most pertinent thing, which is the billing integration? Well, I didn't understand the district judge to be focusing, frankly, on whether this was in the present tense or in the past tense. I thought his concern, frankly, was that there was not a specific reference to the billing portion in the middle of the brochure. And to be sure, there isn't that. So there is an omission. Whether that omission is material or not, it seems to me, remains an open question. Because what we do know is that when the patent agent disclosed the charting information, which was not disclosed in the application, that didn't make any difference whatsoever. The examiner went ahead and approved claim number 15, even in the face of the fact that there was now charting information that we knew came from here. So it strikes me, at least at a minimum, as quite implausible that this was a material fact. And then, beyond that, Judge Dyke, the notion that the kind of intent you need to truly deceive the patent office, and thereby obviously divest a party of the entire patent, shouldn't hang on whether or not something is in the present tense or the past tense. To be sure, maybe there was a basis for claim that there was a breach of a duty and that there was negligence in this context. But a breach of a duty and negligence, as the district court seemed to recognize but refused to reply properly, is not a sufficient basis on which to declare that there's inequitable conduct sufficient to divest the patent holder of his right. Mr. Charles, do you agree that this brochure, printed at page 7 of your opponent's brief, discloses an integrated system? Or do you say they refer to these things, but it doesn't show integrated? The reason I raise that question with you is that the specification seems to suggest that what this patent has achieved is an integrated system. The previous systems were not integrated. And I wonder whether, I just raised this question, is this an integrated system that's disclosed? There is a reference, a couple of places in red, it uses, with an arrow, it says integration. But are all of these, of the things that are disclosed in this brochure, are they all integrated into a single system or are they separate systems? Well, I mean, what the brochure says in the middle is it talks about a dispatch module and a flight management module and it says that you can put the two together. And it says, as part of a flight management module, that billing is a breeze. How that interacts and whether, in fact, that's exactly what happens is, candidly, anybody's guess. So you not only, to my mind at least, have the problem of, if they had focused on this particular language, it's unclear precisely what it means. But you still have what is still the more fundamental problem, which is you don't know whether this is describing a system that existed prior to the application or describes a system at the date when this brochure was released after the application or, frankly, doesn't describe a system that exists. The evidence is at least as clear as any other alternative that's on the table that this could be describing a system that never existed, that this is aspirational, that they're trying to encourage people to show up and say, look, tell me what you need by way of matching up billing with these other activities and we will try to provide that to you, that that's what this brochure is all about. We know what it is, it's an advertising brochure, it's something they give out at meetings. Yes, that is precisely what it is, Judge Friedman. They have an annual meeting and this brochure sits on the corner of a booth and is picked up according to my client's best recollection, which, of course, remember all this takes place 10 years after the fact when you're trying to figure out what happened here, which is, to my mind, another problem with inequitable conduct inquiries to begin with. So he recalls, he thinks, picking up a brochure, handing it off to his lawyer, which you would say is the most sensible thing to go. They say, you know, it's very difficult for me to see any basis for finding an inference of any kind of wrongdoing in that, and yet the district judge criticizes him, suggests that clearly reveals that he understood that this was material. Doesn't reveal anything. It simply says give your material to your lawyer. Mr. Phillips, the focus, what seems to shine through the district judge's opinion is more questions of credibility than anything else. He finds it hard to believe that the patent agent didn't mention what was inside the brochure even though he testified that he reproduced almost word for word what was on the front cover of the brochure when the billing information and so on within the brochure was the argument, the major argument for patentability. So the district judge was concerned about the credibility of the agent. Then he receives conflicting testimony from the inventor, from Dr. Hutton, as to when he received the brochure even though it's undated. And the timing is quite close. And I came away with the impression that here rather than questions of the traditional materiality and intent to accept, it does look very much as if what was inside the brochure was at least as material as what was on the cover, that he concluded that it had been artfully selected in terms of what was placed in the IDS and without, I think, accepting that the agent was trying to report the prior art, the IDS. So when you have questions of credibility, which are very hard for us to second guess here, what happens there when we're dealing with intent? To me, the fundamental question of credibility goes to the issue of what did the patent agent conclude with respect to the absence of a date? Yeah. Because that was the primary explanation for why the patent agent didn't go further with the information that was on here. The judge didn't believe him. Judge didn't say that. No, the judge didn't. Maybe they didn't say it, but he acted as if he didn't. No, but I think that's critical, Judge Newman. It seems to me that if the patent agent puts forth a good faith explanation that because this was undated, and because I had been chided previously for providing undated information, that was the reason I didn't do it. Now, that may or may not be the law, or it may not be required, but it was certainly a good faith explanation offered, and the district judge did not say, I don't believe him. He didn't say that. The problem is that it wasn't consistent. Why is he disclosing part of the brochure if he thinks the brochure is irrelevant because it's undated, but not disclosing the other part of the brochure? Because he felt he had an obligation to provide the most up-to-date information he had available, and he did. Well, then why was he providing up-to-date information if it was undated? I mean, if he thought it was relevant to provide part of it, why didn't he think it was relevant to provide the other part of it? Because he made an error in judgment. Unless you're going to reach a conclusion that every error in judgment of information that's material rises to the level of intent. It's not just a question of error in judgment. It's a question of the fact that partial disclosure undercuts his explanation that he thought the undated brochure was irrelevant. He chose to disclose part of it, but not the other part of it. If he'd simply said, okay, this brochure is undated. I'm not going to pay any attention to it. That would be one thing, but he did pay attention to it. He took part of the brochure and submitted an IDS with respect to it. Right, and he explained why he did that. He explained that he took the specific descriptions straight off the front page and put them in the IDS. And what's important in that respect, Judge Newman, is that it's not as though, I think this would be a very different case, candidly, if billing had been one of the seven items described in the front page of this IDS, of this brochure, and he had excluded billing from it. But he didn't do that. He gave an exhaustive description, which included medical charting, which the other side recognizes was a significant element of Claim 15. So he's not hiding anything. He's disclosing the basic information that he took off there. This is, I mean, the problem with this case is there's simply no evidence of intent to not disclose this. This is not a case like the cases in the past where you had an inventor who's been negotiating with the PTO and needs to get around some kinds of objections that have been interposed, or a situation where you know the inventor knows how important this information is and lies to his lawyer or lies to the PTO in order to set a groundwork, so that you have a motive to deceive the PTO embedded in the case. All you have here is a failure to disclose certain information, which with the benefit of 10 years of hindsight, you can now say may or may not have been material. It seems to me that may be negligence. But I have a very hard time dealing with it as a question of true inequitable conduct that divests the patent holder of its rights under these circumstances. With respect to, I realize my time's probably up. We're over. Let's hear from the other side. We'll save you rebuttal time, Mr. Phillips. I assume you don't want to hear about joint infringement at this point, then. Mr. Weiss-Flatt. Thank you, Your Honor, and good morning. May it please the court. Judge Ward did make specific factual findings in this case, in his opinion, that are not challenged, much less shown to be clear error. Judge Friedman, you asked about billing and integration. Judge Ward specifically found from the brochure that it taught integrated billing with medical charting and dispatch. There is no challenge to that finding to this court. But the agent did take everything that was on the front of the brochure, which was obviously the principal communication from the author of the brochure to the public, whoever read it, and put the whole business, which was indeed very close to most of this invention. Your Honor, it's absolutely accurate. He put exactly what was on the front page of this trifold brochure. We know, or the district court concluded as a fact, that of course, to realize it wasn't dated, even the most cursory review would have seen on the inside the statements that the judge found taught integrated billing. Because Judge Ward found, as a fact, that the inventive concept of the claims that were pending, and there was only one office action and then issued, the issued claims and the pending claims, that integrated billing was the inventive concept that was used in the specification and before the patent office to obtain allowance of the claims. So why isn't it gross, at worst, gross negligence for the agent to have disclosed fully everything that the creator of the brochure said in their announcement to passers-by at trade shows or wherever apparently the brochure was picked up at a trade show of some sort? Because that is more than gross negligence, Your Honor. That excuse permits the practitioner here to have avoided the heart of what makes the selective misleading disclosure so material. The examiner needed to understand that there was a brochure from the ArrowMed system that even the most cursory review of the most casual reader would find integrated billing. What did the agent testify about his... He received the brochure, right? Yes, Your Honor. And what did he testify about his review of the brochure? First, it was conceded before the district court that there was a deliberate and probably a deliberate and conscious decision not to give the brochure to the patent office. Because it was undated. Because it was undated. But Your Honor, and I think has been pointed out, the fact that the brochure is undated is neither a plausible nor a good faith explanation. But what I'm asking about is selectivity. Here he reproduces part of the brochure, but not the other part of the brochure. That's the heart of the problem here. It's the heart of the district court's finding. What did the patent agent say about the selectivity issue? Did he say he didn't read the rest of the brochure? What did he testify to? He mostly said that he could not recollect having read the brochure. And in fact, we point out, Judge Ward decided to question him directly on this very issue and never got an answer to that critical question. Even to explain to the witness, you're not answering my question. There isn't a good faith explanation for the selective misleading disclosure of what's in that brochure. 10 years had passed. To come up with a detailed explanation of why you did something 10 years earlier isn't so credible either. And that's understandable, Your Honor. But the undated part, first of all, there was testimony that at the time, he has no recollection that he didn't give the brochure because it was undated. This is his testimony in 2009. It was his general practice. But giving credence to that explanation, and Judge Ward went into it in detail, it doesn't explain why you would list the seven attributes on the cover and not go into what Judge Ward specifically found to be the crux of the inventive concept of the patent. With the hindsight knowledge of what this patent was about, then knowing that it also included additional aspects beyond what was on the cover of the brochure, they say, well, there it is. You should have disclosed that also. Well, I don't believe that Judge Ward's choice of the words, even the most cursory review, was happenstance, Your Honor. This is a case where to determine that brochure was undated, even giving credence to the 2009 explanation. The practitioner here had to read the whole brochure. It's the only way that you could even assume that someone could conclude it wasn't dated. And when you read that brochure, and you find that it says that the two modules, when you enter information from one module, it's automatically put into the other module. This is the essence of the claim construction of integrated. There isn't any doubt, and was it no doubt in Judge Ward's mind, that looking at the pending claims and looking what's disclosed in the specification, the failure to disclose to the patent office the integrated billing that was taught in the brochure has no explanation other than it was done with the intent to deceive. And Your Honor, unsupported accusations of inequitable conduct are a plague. The finding of inequitable conduct renders a patent unenforceable. That is a harsh result. Where do we find the testimony of the agent on this point? It is in the joint appendix, Your Honor, at 4669 to 7-3. At those pages, Judge Ward repeatedly asked the prosecution counsel for a credible, plausible explanation for the selective, misleading disclosure. And I think it is... And he said he couldn't remember. Well, why? Other than this is what he must have done, is that what he said? No, for the selective disclosure, he had no explanation. That he took it off the front. Yes, that is that he disclosed only the seven attributes and not the integrated billing, because that's what this case is about. This case is not about non-disclosure. This is not about a reference that's found in a file that, with hindsight, you should have, maybe, could have given it to the patent office. This was, admittedly, a deliberate, conscious decision to describe the brochure rather than give it to the patent office. Our patent system requires that when a practitioner takes it that it has to be full and fair. It is not, as was testified by the practitioner, it is not something where I'm going to give the patent office half a loaf so the patent office can search, so the patent office can figure out. What should have happened in this case is clear. You give the brochure to the patent office. I'm not sure that's true. I mean, it seems to me that the real question is not failing to give the brochure to the patent office, but the selective disclosure in the IDS of part of what was in the brochure, but not the other part, when the other part was damning. I agree. That's the problem. But if you have that brochure in front of you, you have an obligation to fairly and fully describe it to the patent office if you're not going to give it to the patent office, and that's the failure here. There's no explanation for that failure. It's not 10 years of hindsight. There is no explanation ever offered by the practitioners involved here of why that selection was made and the critical feature not given to the patent office. And this was an all-day bench trial. All of the actors testified live in front of Judge Ward. He concluded his opinion with an observation that the testimony of prosecution counsel was not helpful in determining whether a credible alternative explanation existed. Because he didn't remember why he had made a decision or a non-decision or taken certain steps years earlier. But, Your Honor, even with years earlier, you have the inventive concept of the patent in this brochure, and everything else on the front is disclosed, but not this crux issue. What explanation could you give for that? What credible, plausible explanation could you give for omitting the central feature of your claims that's in a brochure that you're copying from? Well, I think the explanation could be that he didn't read the rest of the brochure. Now, I understand he didn't say that, but it's possible that that would be an explanation, that he carelessly only read the front page of the brochure and took that from there and didn't read or understand the rest of it. That could be an explanation. It could be, Your Honor, but then the undated, as Judge Ward pointed out in his opinion, then the undated excuse completely drops away. There isn't any way that you could get on the witness stand and say, I didn't give this brochure because it was my general practice not to give an undated brochure. You could not truthfully give that testimony unless you believed you had read it at least enough to know that somewhere in that brochure, it doesn't say, here in 1996 or here in 1998. Even the most cursory review, finds Judge Ward, would have understood that integrated billing was disclosed. The problem, I understand what Judge Ward said. The problem is, if he'd said, I'm convinced that the patent agent read the entire brochure and I'm convinced that he knew that this integrated billing was disclosed by the brochure and that he deliberately didn't disclose it, that would be one thing. I don't see that his findings quite went that far. I believe they did, Your Honor, when Judge Ward, in his opinion, starts talking about deliberate cultivated ignorance. At one point in his decision, Judge Ward mentions that if you are going to permit this kind of deliberate cultivated ignorance, then the duty of candor is lost. The duty of good faith and fair dealing with the patent office becomes meaningless. I don't think that's quite an answer to say that maybe Judge Ward should have made better findings. The problem is he sort of dances around this central question of whether he thinks the guy is lying or not. Well, Your Honor, I believe a fair reading... He's being polite. I believe that he is being polite when you put in your opinion, at least on four different occasions, that the testimony is unhelpful, it is inconsistent, and other direct observations from the trial. I believe that Judge Ward, in effect, is making credibility determinations and not crediting the testimony of any of the three witnesses that he heard. But to return to what you asked, in making the observation about deliberate cultivated ignorance  I believe Judge Ward is there addressing the idea that somehow you're going to excuse what happened because of the imagination that it was careless. He didn't read the whole brochure. That statement, combined with the idea of how can I determine it's undated if I don't read the brochure, those two findings by Judge Ward, in essence, perhaps not expressly, but with all due respect to writing an opinion, as Judge Ward did, he is not crediting the explanation that I didn't read the whole brochure. Well, now, wait, was there such an explanation? There was never. That was never testified to below. Never. Never brought up before was the argument I didn't read the brochure. Nowhere in the record does that testimony occur. Nobody asked him? He testified, did he not? Yes, he did. And both Judge Ward and I asked him that question directly. And he said he couldn't remember. And he said he couldn't remember. But when he's faced with you... It was in the part where Judge Ward was asking the questions that I gave you the cite to before. The idea that you have this collision between it's undated and my... Although I don't know I did it for this brochure. It's undated, so I didn't give it to the Patent Office. That's the practice he testifies to. There's no evidence that's what he did in 1998. But it is 10 years later. So we have to, I think, give some view to that. But then the central explanation is it's undated. When he testified it's undated, the questions became very clear from both Judge Ward and myself. Where does he ask, did you read the brochure? Again, on page 4672, Judge Ward asks, still you're not answering my question. In my mind, why did you elect? How did you make the election that you left out billing in the term integrated software? I would expect that it's just the front page of the brochure, Your Honor. I just looked at the front page and wrote down those things Arrowmitt said about the brochure. But you didn't look. You wrote it down, but you left two out. Now on 4673. Well, no, the billing is in the center middle fold, if I recall of that. And I probably just looked at the front. And then he continues, I don't recall. I really don't. But so likely, I looked at the front and wrote down what the front thing says. OK. That is part of the testimony. A visiting practitioner could do that. But not then determine it was undated, Judge Newman. These two factors collide and permit of, there is no wiggle room here. If the defense below that was rejected by Judge Ward was that the brochure is undated, as he found, even the most cursory review of the brochure would have found the part that was found by Judge Ward. Are you saying that his testimony was misleading because he must have read the whole brochure before using it? And that is what Judge Ward found. Yes, Your Honor. Exactly. The only way the practitioner could testify the brochure was undated before the district court was to give it, again, even the most cursory review, looking for a date. Did Judge Ward ever say that he found this testimony that he, in effect, reviewed only the front of the brochure incredible? No, Your Honor. He did not. Did he question this witness's credibility? Yes, he did, directly. He questioned the witness's credibility by remarking on this very point that his testimony is inconsistent. And did he find, in his opinion, that this was not a credible witness? Not expressly, Your Honor, but I'm not sure that wasn't the result more of politeness than anything else. Did he say that this testimony was inconsistent? He was talking about the inventor, wasn't he, when he said it was inconsistent as to when and where he That was with the inventor. But with the practitioner, the inconsistent comment by Judge Ward, in his opinion, went directly to, if you claim you didn't know it said integrated billing, yet you claim you knew or your defense is that it was undated, this is inconsistent because even the most cursory review to determine whether it was undated would have seen integrated billing. That is the point at which Judge Ward finds inconsistent testimony. And it is inconsistent, Your Honor. But don't we have a situation in which the findings that are made by the district court perhaps aren't adequate for us to determine whether he was correct or incorrect? Is this perhaps a situation in which we have to send the case back to Judge Ward to ask him to make more direct findings about whether he concludes that this agent actually read the brochure and deliberately didn't disclose the key part of it? What bothers me is he hasn't expressly made that finding. He said some things that dance around it, but he hasn't made it. Why shouldn't we insist that he directly address the question and tell us what his findings are? Because I believe that he did address that question sufficiently. Because there is only two possibilities here. One possibility is that he didn't read the brochure and only read the front. Or he read the whole brochure. It's the only two possibilities. The first possibility is so implausible that he's- But if true, it wouldn't be inequitable conduct, would it? That would be negligence. But how could then the same witness- I understand what you're saying. But let's assume that there were a finding that he just- he was careless. He only read the front page of the brochure. He didn't realize that there was this damning thing later in the brochure. And that he's sorry, but he made a terrible mistake, but that's what it is. That's not inequitable conduct. On the other hand, if in fact he read the whole brochure and deliberately didn't disclose this key thing later in the brochure, that probably would be inequitable conduct. So there's a problem here. We don't know which is which. Your Honor, I would submit that not reading the brochure is, in fact, a failure to live up to the duty of candor. That's a hard one. Well, Your Honor, at some point, deliberate, cultivated ignorance. I'm not going to read the brochure that I have in my hands from the inventor. Oh, if he deliberately didn't read it, that's one thing. But my hypothetical isn't he- not that he didn't deliberately ignore it, it's just that he was careless. He didn't take the time to do a thorough job. That's not inequitable conduct. But he made the deliberate decision to describe to the Patent Office only part of the brochure. We don't know that, because we don't know whether he read the whole thing. Maybe he did, maybe he didn't. And maybe if the district court had made a finding that he read the whole thing and deliberately was selective about it, that would be one thing. But I'm having a little difficulty seeing that Judge Ward went that far. Well, Your Honor, I think we have to get back to the first principle of, if he didn't- you asked, if he didn't read the brochure, was that inequitable conduct? And you had some trouble with that. But we have to, I think, take the case of, is he purposefully not reading the brochure because he doesn't want to know what's in the brochure? But that's all surmise. It may be that he was just simply negligent. He read the front of the brochure and looked at it inside and said, well, that's just a bunch of technical stuff. I don't have to pay any attention to that. They've said everything on the cover of the brochure. That admittedly would be negligence, but it's hard to say that that would be inequitable conduct. But again, I go back to, the defense was it's undated. You can't reconcile the defense, the excuse of undated, with anything other than he had to look at the brochure to see whether or not it had a date. That's Judge Ward's central point here. If he's going to take the witness stand and he's going to offer the plaza a- Well, did he have to read the rest of the brochure? He could just look around, look it over, and see if there was a date on it. And he looked at it, and he didn't see a date. He didn't read the whole of it. The finding below, even the most cursory review of that brochure would have determined that it taught billing integration. There's no challenge to that factual finding. The demeanor and the credibility of the witnesses are in front of the district court judge. But even the most cursory review assumed that one read the whole brochure, didn't it? Well, I think the point being made is even the most cursory review to determine it didn't have a date would require reviewing the whole brochure. It's the only logical explanation for that statement. An undated brochure, to be able to testify in that fashion, requires some review of the whole brochure. Because the whole defense- I don't know. If I want to find the date on which a court entered a judgment, I look at the judgment. If I see up at the top of it a date, I don't read the whole judgment. Your Honor. I don't have to. This brochure, as we're talking about here, is certainly not a court opinion. Remember, we're having a witness who's testifying that he's not going to give the brochure, or doesn't have to give the brochure, because it was his general practice not to give undated material to the patent office. There's no single place on a brochure that you would be able to- Have we exhausted this? Aspect? OK. Thank you, Your Honor. Thank you. Would you enlarge Mr. Phillips' time by the amount we've run over, whatever that is? You may not need. I recognize that I don't have to take the entirety of the time you allot me. Thank you, Your Honor. I will try to be brief. First of all, the counsel on the other side started off by talking about the office action in this case, and the importance of evaluating that office action in connection with the integrated billing. I think it's pretty important to focus on the office action in this particular case, approved claim 15. Claim 15 is the only claim that specifically does not involve billing. It's a charting claim. And so therefore, the disclosure in the IDS of medical charting, which was on the application, would have gone directly to 15. And 15 is the only one that got approved. The one thing counsel has not discussed today is materiality. Everything he said had to do with intent. I think you've got a hard time arguing that a disclosure of integrated billing isn't material. And Judge Ward found that the brochure disclosed integrated billing. I mean, the real question that strikes me is whether there's the requisite intent finding. Well, and I want to get to the requisite intent, but I'm not prepared to walk away, Judge Dyke, from the materiality point. If for no other reason than because it is an undated brochure, we still have no idea whether or not he is describing it, whether that brochure describes anything that existed prior to the time of the application, prior to the time of the IDS, or even at the time the brochure was, in fact, disclosed. Well, that's a difficult point. If it was just a few weeks after the patent application was filed that the inventor took it to the agent, it's really hard, despite the vaguenesses of the inventor's testimony as to where he got it, to say that it didn't exist before filing. I don't think that that was really contested, was it? Well, sure it was, absolutely. That was precisely the testimony of the patent agent when specifically to saying, he said repeatedly, I looked at it, and I concluded that I didn't know what it was describing. And the inventor himself specifically said on a number of occasions that it's very common in this business for brochures to describe things that don't exist. So that may be true, but he's filed an IDS which disclosed part of the brochure but didn't disclose the other part of it. He at least thought that the first part of it was material enough to disclose. And if he knew and deliberately decided not to disclose the second part of it, that's a real problem. That comes pretty close to inequitable conduct. And a finding otherwise would be hard to sustain. Well, Judge Dyke, I will respectfully agree to disagree with you and step back from the materiality point and focus on the specific question of intent. When you ask for the testimony, and counsel's properly read it to you, but the specific question is, how did you make this election to leave out the billing in the middle information? This is on 4672. And he specifically says, again, remembering that this is 10 years before. At the time that he's filling out these forms, he's got literally dozens of other applications that he's worked on, that he's been working on. But he said, I would expect that it's just the front page of the brochure, Your Honor. I just looked at the front page of the brochure and wrote down those things. If that testimony were credited, that he just looked at the front page of the brochure, that he was negligent at not looking at the rest of it, that's not inequitable conduct. That's not intent. OK? Right. That's true. The trouble is that it seems as though Judge Ward didn't believe him. Except that Judge Ward doesn't say that. Not explicitly, but in response to him. Well, it seems to me, Judge, before you're going to divest the patent holder of his entire rights to the patent for conduct by his lawyer, or in this case, by his patent agent, that you, at a minimum, ought to require the district judge to step up and say, these are the specific findings that I make with respect to intended deceased. OK, that may be. So why shouldn't we send it back and tell Judge Ward? Well, that's the least you ought to do, is send it back for those purposes. But that said, I mean, the reality here is that there is not a basis on which to make a specific finding of intent. Because the most that you have here is arguable negligence under these circumstances. And here, it's worth sort of two elements to look at. OK? First question is, did he have an obligation to turn over the brochure? And there, it seems to me, the answer is clearly no. They had a good faith explanation for it, and the district judge doesn't say word one about not turning over the brochure. So then the question is, did he have an obligation to go beyond page one and look at the other two parts of it? And there, it seems to me, counsel and the district judge always go to the same basic argument, which is that this is somehow cultivated ignorance, or that this is a duty of candor, et cetera. And it seems to me that all of that duty of candor argument as a deus ex machina for the failure to make findings of intent is fatal. That is precisely what it seems to me this court said. And star scientific is not a sufficient basis upon which to enter a finding of intent sufficient for inequitable conduct. So unless the court has further questions, your honors, I realize I've consumed the balance of my time. Question? OK. Thank you, Mr. Phillips and Mr. Weisflat.